UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANGELA D. FISK,

                          Plaintiff,

      v.                                                                **DECISION AND ORDER**
                                                                                14-CV-931S

CAROLYN W. COLVIN, *Acting Commissioner of Social Security*,

                          Defendant.

     1.      Plaintiff Angela D. Fisk challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since August 1, 2010,[1] due to bipolar disorder, a learning disability, headaches, and sleep apnea. Plaintiff contends that her impairments render her unable to work, and thus, she is entitled to disability benefits under the Act.

     2.      Plaintiff filed an application for disability benefits and supplemental security income on March 11, 2011, which was denied on June 10, 2011. Plaintiff thereafter requested a hearing before an ALJ. On February 11, 2013, ALJ Michael Friedman conducted a video hearing at which Plaintiff appeared and testified. Plaintiff was represented by counsel. At the time of the hearing, Plaintiff was 26 years old, with a high school education, and no past relevant work experience. The ALJ considered the case *de novo*, and on February 20, 2013, issued a written decision denying Plaintiff's application for benefits. The Appeals Council denied Plaintiff's request for

---

[1] On Plaintiff's initial application for benefits, she alleged an onset date of October 1, 2009. At her hearing before the ALJ, Plaintiff amended her onset date to August 1, 2010.

1

review on September 2, 2014. Plaintiff filed the current action on November 3, 2014, challenging the Commissioner's final decision.[2]

3. On April 3, 2015, Plaintiff filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 4, 5). On July 1, 2015, the Commissioner filed a Motion for Judgment on the Pleadings. (Docket No. 9). Plaintiff filed a reply on July 23, 2015 (Docket No. 10), at which time this Court took the matter under advisement without oral argument. For the following reasons, Plaintiff's motion is denied, and Defendant's motion is granted.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the

---

[2] The ALJ's February 20, 2013 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

7. The five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted

3

> with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since August 1, 2010, the alleged onset date (R. at 22)[3]; (2) Plaintiff's depressive disorder is a severe impairment within the meaning of the Act (R. at 23); (3) Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 23); (4) Plaintiff retained the residual functional capacity to perform a full range of work

---

[3] Citations to the underlying administrative record are designated as "R."

4

at all exertional levels but with the nonexertional limitation of simple, routine, repetitive type tasks involving only occasional contact with others (R. at 25); (5) Plaintiff could perform jobs that exist in significant number in the national economy (R. at 27). Considering Plaintiff's status as a younger individual, with a high school education, no transferable job skills due to lack of past relevant work, and a residual capacity with non-exertional limitations, the ALJ determined that Plaintiff was not under a disability as defined by the Act at any time through the date of his decision, February 20, 2013.  (R. at 27).

10.	Plaintiff contends that the ALJ erred by (1) failing to follow the treating-physician rule and failing to properly determine her residual functional capacity; (2) failing to properly evaluate Plaintiff's credibility; and (3) relying on the Medical-Vocational Guidelines.  Each argument will be discussed in turn.

11.	Plaintiff first argues that the ALJ erred by rejecting the opinions of Plaintiff's treating physician and instead substituting his own lay interpretation of the clinical and diagnostic findings in the treatment notes.  The treating-physician rule requires an ALJ to give controlling weight to a treating source's opinion on the issues of the nature and severity of a claimant's impairments, if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.  See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004).  If the ALJ does not give controlling weight to a treating source's opinion, he must apply several factors to determine what weight to afford the opinion, which include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment

> relationship; (3) the degree to which the medical source supported his opinion; (4) the degree of consistency between the opinion and the record as a whole; (5) whether the opinion is given by a specialist; and (6) other evidence which may be brought to the attention of the ALJ.

Morrillo v. Apfel, 150 F. Supp. 2d 540, 545-46 (S.D.N.Y. 2001). See 20 C.F.R. §§ 404.1527(c), 416.927(c).

12. The Commissioner must also provide a claimant with "good reasons" for the lack of weight attributed to a treating physician's opinion. 20 C.F.R. § 416.927(c)(2); accord Schaal v. Apfel, 134 F.3d 496, 503-04 (2d Cir. 1998). But as this Court has previously recognized, an ALJ "does not have to explicitly walk through these factors, so long as the Court can 'conclude that the ALJ applied the substance of the treating physician rule . . . and provide[d] 'good reasons' for the weight [the ALJ] gives to the treating source's opinion.'" Hall v. Colvin, 37 F. Supp. 3d 614, 625 (W.D.N.Y. 2014) (quoting Halloran, 362 F.3d at 32); see Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (explaining that ALJ need not undertake a "slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear").

13. Here, the ALJ reviewed the opinions and treatment records of Dr. Chinyelu Ikeako, Plaintiff's treating psychiatrist. (R. at 23-26). The ALJ gave "great weight" to Dr. Ikeako's treatment records, which the ALJ found "demonstrate that [Plaintiff's] symptoms have improved with treatment," but gave "little weight" to Dr. Ikeako's January 18, 2013 opinion, which was that Plaintiff was moderately or markedly limited in a variety of "mental activity" areas and experienced "episodes of deterioration or decompensation" in work settings. (R. at 26, 290, 292-93, 295). The ALJ rejected Dr. Ikeako's opinion, which was recorded on a Non-Exertional Impairment

Questionnaire, because it was not well-supported and was inconsistent with other substantial evidence in the record, including Dr. Ikeako's own treatment notes. (R. at 26). This conclusion is supported by substantial evidence in the record.

First, just five months before her January 18, 2013 opinion, Dr. Ikeako completed a different form seeking her opinion concerning Plaintiff's mental functioning. (R. at 271-73). In this August 23, 2012 opinion, Dr. Ikeako found no mental functioning deficiencies whatsoever, and noted simply that Plaintiff was diagnosed with bipolar disorder and suffered from an unspecified thought disorder. (R. at 272). Dr. Ikeako's January 18, 2013 opinion contains no explanation for the stark change from her August 23, 2012 opinion offered just months before.

Second, Dr. Ikeako's treatment notes do not reflect moderate or marked functional impairments, but rather, reflect steady improvement with treatment. Records of five visits from July 25, 2012, through November 16, 2012, reflect that Plaintiff's mood and affect were improving, she was less agitated, and she was complying with medications. (R. at 275-283). On September 17, 2012, Plaintiff's thought process was more linear and goal-directed and her concentration was improving. (R. at 277). On November 16, 2012, Plaintiff's mood and affect were neutral, her concentration was good, and her judgment and insight were fair. (R. at 275). During this time, Plaintiff's Global Assessment Functioning (GAF) Score[4] improved from 40 to 58, demonstrating that Plaintiff's functional difficulties improved from major to moderate. Thus, rather than deteriorating between Dr. Ikeako's August 23, 2012 and January 18, 2013 opinions, the treatment records show that Plaintiff's condition was actually improving.

---

[4] A global assessment functioning score is a snapshot of an individual's level of functioning at a particular time.

7

Third, the treatment notes do not document any instances where Plaintiff suffered episodes of deterioration or decompensation. (R. at 273-88).

Consequently, this Court finds that the ALJ's consideration of Plaintiff's treating physician's opinion was consistent with the treating-physician rule, and that his decision to discount Dr. Ikeako's opinion is supported by substantial evidence in the record.

14.  Plaintiff next contends that the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence.  A plain reading of the ALJ's decision, however, reveals that the ALJ properly identified and discussed the evidence that he considered in making his RFC determination.  In particular, the ALJ found that Plaintiff could perform a full range of work at all exertional levels, which is fully supported by the lack of evidence that Plaintiff suffered any physical limitations.  (R. at 24-26).  The ALJ further found that Plaintiff has a non-exertional limitation: she is limited to jobs involving simple, routine, repetitive type tasks involving only occasional contact with others.  (R. at 25-26).  This determination is supported by Plaintiff's treatment records and Plaintiff's statements.  (R. at 26).  Finally, as noted above, this Court finds that the ALJ properly discounted Dr. Ikeako's opinion, which is the only one that could support a more restricted RFC determination.  Consequently, this argument fails.

15.  Plaintiff next argues that the ALJ failed to properly evaluate her credibility. In particular, Plaintiff faults the ALJ for considering that her condition improved with treatment, that her GAF scores reflected improvement, that her activities of daily living were inconsistent with her claim of disability, and that she had a relatively modest work record.  None of these considerations form the sole basis of the credibility determination and none amount to reversible error.

16. Credibility determinations are generally reserved to the Commissioner, not the reviewing court. Aponte v. Sec'y of Health and Human Svcs., 728 F.2d 588, 591 (2d Cir. 1984) (holding that it is the job of the Commissioner and not the reviewing court to make determinations on the credibility of witnesses); Carrol v. Sec'y of Health and Human Svcs., 705 F.2d 638, 642 (2d Cir. 1982) (similar). The ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged. See Paries v. Colvin, No. 5:11–CV–0478 (LEK/ATB), 2013 WL 4678352, at *9 (N.D.N.Y. Aug. 30, 2013) (citing Snell, 177 F.3d at 135).

The Commissioner has established a two-step process to evaluate a claimant's testimony regarding his or her symptoms:

> First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant. Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.

Matejka v. Barnhart, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005); see 20 C.F.R. §§ 404.1529, 416.929.[5] In evaluating an individual's symptoms,

---

[5] The Social Security Administration has updated its guidance on evaluating symptoms in disability claims. See SSR 16-3p, 2016 WL 1119029 (effective March 16, 2016). The new ruling eliminates the term "credibility" from the Administration's sub-regulatory policies to "clarify that subjective symptom evaluation is not an examination of the individual's character" and it also aims to "more closely follow our regulatory language regarding symptom evaluation." Id. at *1. Accordingly, the Commissioner will consider "all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms. Id. at *1-2. Moreover, the now rescinded SSR 96-7p and SSR 16-3p are not patently inconsistent as a comparison of the two reveals substantial consistency, both in the two-step process to be followed and in the factors to be considered in determining the intensity and persistence of a party's symptoms. Compare SSR 16-3p with

> adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, . . . adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities . . ."

SSR, 16-3P at *10.

17.  "At the first step in the credibility analysis, 'plaintiff's allegations need not be substantiated by medical evidence, but simply consistent with it. The entire purpose of section [ ] 404.1529 . . . is to provide a means for claimants to offer proof that is not wholly demonstrable by medical evidence." Hogan v. Astrue, 491 F. Supp. 2d 347, 353 (W.D.N.Y. 2007) (emphasis in the original) (internal citations omitted); see also 20 C.F.R. § 404.1529(c) ("Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions . . . , which can be reasonably accepted as consistent with the objective medical evidence and other evidence, will be taken into account.")  "Only allegations beyond what is substantiated by medical evidence are subjected to a credibility analysis. To require plaintiff to fully substantiate [his] symptoms would be both an abrogation of the regulations and against their stated purpose." Hogan, 491 F. Supp. 2d at 353 (citing Castillo v. Apfel, No. 98 Civ. 0792, 1999 WL 147748, at *7 (S.D.N.Y. Mar. 18, 1999).

18.  If the ALJ determines that the claimant is impaired, he must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the

---

SSR 96-7p. Therefore, it is appropriate to evaluate Plaintiff's credibility in light of the new guidance the Administration has provided.

claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility. See Genier v. Astrue, 606 F.3d 46, 49 (E.D.N.Y. 2010); see also Poupore v. Astrue, 566 F.3d 303, 307 (2d Cir. 2009) (finding that claimant's subjective complaints of pain were insufficient to establish disability because they were unsupported by objective medical evidence). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002), and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying. Yellow Freight Sys. Inc. v. Reich, 38 F.3d 76, 81 (2d Cir. 1994).

19.     If a claimant's contentions are not supported by objective medical evidence, the ALJ must then consider the following factors to make a determination regarding the plaintiff's credibility: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. See 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii); SSR 16-3p, at *7; Meadors v. Astrue, 370 F. App'x 179, 184 n.1 (2d Cir. 2010); see also Murphy v. Barnhart, No. 00 Civ. 9621 (JSR)(FM), 2003 WL 470572, at *10–11 (S.D.N.Y. Jan. 21, 2003) (citing 20 C.F.R. § 404.1529(c)). "An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's

demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting Gallardo v. Apfel, Civ. No. 96–9435 (JSR), 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)) (citations omitted).

20. Here, at the first step of the credibility analysis, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (R. at 25.) But at the second step, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible, for the reasons explained in this decision." (R. at 25.)

21. Contrary to Plaintiff's argument, the ALJ's findings that Plaintiff benefitted by relatively minimal treatment, that her condition improved, and that she was able to perform many tasks of daily activity is fully supported by substantial evidence in the record (as discussed above) and by Plaintiff's ability to live on her own, complete household chores, care for her pets, shop, travel alone, and interact with family and friends. (R. at 26, 61, 62). Although Plaintiff contends that her daily activities were insufficient evidence that she has the residual functional capacity to perform full-time work, the ALJ is permitted to consider them. See 20 C.F.R. § 404.1529(C)(3); SSR 96-7p; see Whipple v. Astrue, 479 Fed. App'x 367, 370-71 (2d Cir. 2012) (noting that under 20 C.F.R. § 404.1529 the ALJ must consider all of the available evidence, including the claimant's own description of his daily activities).

Further, it was not error for the ALJ to consider Plaintiff's modest earnings in evaluating her credibility. The ALJ correctly noted that Plaintiff had modest earnings; her work experience included positions as a cashier, cleaner, and factory worker at $7.00-$7.75 per hour. (R. at 192). This work history is relevant to her credibility and, in any event, does not entitle her to the presumption of credibility one with a good and long work record enjoys. Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983) (citing Singletary v. Sec'y of Health, Educ. and Welfare, 623 F.2d 217, 219 (2d Cir. 1980)). The ALJ did not err by considering it.

Consequently, this Court finds no reversible error in the ALJ's credibility determination, which fell well within his discretion and was supported by substantial evidence in the record.

22.  Plaintiff's final argument is that the ALJ erred by relying solely on the Medical-Vocational Guidelines, rather than call a vocational expert, since Plaintiff has nonexertional limitations.

23.  An ALJ is required to obtain the testimony of a vocational expert only where a claimant's work capacity is *significantly diminished* by her nonexertional limitations. Bapp v. Bowen, 802 F. 2d 601, 603 (2d Cir. 1986) (emphasis added). "Significantly diminished" has been defined by the Second Circuit to mean a loss of work capacity that "so narrows a claimant's possible range of work as to deprive him of meaningful employment opportunity." Id. Consequently, the "mere existence of a nonexertional impairment does not automatically . . . preclude reliance on the guidelines." Id. at 603.

24. Here, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels but with nonexertional limitations. (R. at 24-25). Plaintiff is limited to jobs involving simple, routine, repetitive type tasks involving only occasional contact with others. (R. at 25). The ALJ found that Plaintiff's nonexertional limitations had "little or no effect" on the occupational base of unskilled work at all exertional levels, because Plaintiff had the RFC to perform the basic mental demands of competitive, renumerative, unskilled work. (R. at 27). Thus, Plaintiff's work capacity was not significantly diminished by her nonexertional limitations. As discussed above, these findings are supported by substantial evidence in the record. The ALJ's reliance on the Medical-Vocational Guidelines was therefore proper.

25. Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error in the ALJ's determination. The ALJ's decision adequately discussed the records of the treating physician and the weight assigned to those records, as well as adequately assessed Plaintiff's credibility. Further, vocational expert testimony was not required, because Plaintiff's non-exertional limitations do not significantly diminish her ability to work. Defendant's Motion for Judgment on the Pleadings is therefore granted, and Plaintiff's motion seeking the same relief is denied.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 4) is DENIED.

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.


Dated:	March 29, 2017
	Buffalo, New York

<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge